IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JULIO ALONZO ALVAREZ )<br>CHOC ex rel. MATEO BA TUT and )<br>AURELIA CHE CUZ DE BA, )<br>)<br>    Plaintiffs, )<br>v. )<br>)<br>METROPOLITAN GOVERNMENT OF )<br>NASHVILLE & DAVIDSON COUNTY, )<br>TENNESSEE, METRO NASHVILLE )<br>PUBLIC SCHOOLS, ESKOLA LLC; )<br>JR. ROOFING & CONSTRUCTION LLC; )<br>BUILDERS MUTUAL INSURANCE )<br>COMPANY, )<br>)<br>    Defendants. ) | Civil Action No. 3:24-CV-00836<br><br>Judge Crenshaw<br>Magistrate Judge Frensley<br><br>JURY DEMAND |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ESKOLA LLC'S MOTION TO DISMISS

Plaintiffs allege state law negligence claims against Defendant Eskola LLC ("Eskola") that are plainly barred by Tennessee's workers' compensation exclusive remedy, a state law claim for unjust enrichment that is also barred by the workers' compensation exclusive remedy to the extent it is predicated on Denis Ba Che's personal injury and which otherwise fails under well-established Tennessee law, as well as two federal statutory causes of action that are not supported by sufficient factual allegations as required under the standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As set forth below, all of Plaintiffs' claims against Eskola should be dismissed.

### BACKGROUND

This lawsuit follows a tragic accident. While working on a gymnasium roof at Glencliff High School, Denis Ba Che fell through the roof and died. Doc. 1-1, Compl., ¶ 1. Che was

employed by Defendant Jr. Roofing & Construction, LLC ("Jr. Roofing"). *Id.*, ¶ 3. Eskola served as general contractor for the Glencliff project under a contract with Defendant Metro Nashville Public Schools ("MNPS"). Jr. Roofing was an Eskola subcontractor on the project. *Id.*, ¶¶ 17, 19. Che, though his next of kin, has a claim for workers' compensation benefits under T.C.A. § 50-6-101, *et seq.* Based upon the Complaint and the Motion to Dismiss filed by Builders Mutual Insurance Company ("Builders Mutual"), Eskola understands that a claim for workers' compensation benefits has been asserted by or on behalf of the Plaintiffs.

On May 31, 2024, suit was brought on Che's behalf in Davidson County Circuit Court against Metropolitan Government of Nashville & Davidson County, Tennessee ("Metro"), MNPS, Eskola, Jr. Roofing, and Builders Mutual. Doc. 1-1, Compl. Eskola timely removed this case to this Court. Doc. 1. The Complaint alleges the following causes of action against Eskola: Negligence/Gross Negligence (Count I), Negligence Per Se (Count II), violation of the Fair Labor Standards Act ("FLSA") (Count III), Unjust Enrichment (Count IV), and "Civil Rights Violations Based on Race Discrimination" (Count V).

## LEGAL ARGUMENT

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint. *Ohio v. U.S.*, 849 F.3d 313, 318 (6th Cir. 2017). In reviewing such a motion, the Court should "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, [] draw all reasonable inferences in favor of the plaintiff," and "determine whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016); *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 879 (6th Cir. 2020) (citations omitted). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

I. **Plaintiffs' claims based on personal injuries suffered by Che are barred by the Tennessee workers' compensation exclusive remedy provision because they arise from a workplace injury that occurred within the course and scope of Che's employment.**

In Counts I and II of the Complaint, Plaintiffs bring negligence, gross negligence, and negligence per se claims against Eskola directly related to Che's workplace accident, and in Count IV they bring a claim for unjust enrichment that also appears to be predicated on the personal injuries suffered by Che. It is clear from the face of the Complaint that the October 12, 2023 accident took place in the course and scope of Che's employment with Jr. Roofing. *See, e.g.,* Doc. 1-1, Compl., ¶¶ 3 ("Denis found work with Defendant Jr. Roofing, which company transported him to different jobsites each day to perform roofing work for prime contractors."); 11 ("... Defendants Jr. Roofing and Eskola sent young Denis up onto the roof on October 12th *to work*." (emphasis added)). If Jr. Roofing did not have workers' compensation insurance, Tennessee Workers' Compensation Law provides that a workers' compensation claim could be asserted against the general contractor's workers' compensation carrier, which would provide the exclusive remedy under the workers' compensation statutory scheme. *See* Tenn. Code Ann. § 50-6-113(a).[1]

---

[1] Plaintiffs have brought a separate claim against Builders Mutual asserting that Builders Mutual was Jr. Roofing's workers' compensation insurer. *See* Doc. 1-1, Compl., ¶¶ 97-98. In its motion to dismiss that claim, Builders Mutual has admitted to being Jr. Roofing's workers compensation insurance provider. *See* Doc. 11 at 2 ("As alleged in Plaintiffs' Complaint, Builders was the workers compensation insurance provider for Jr. Roofing & Construction, LLC, employer

3

Case 3:24-cv-00836    Document 23    Filed 08/07/24    Page 3 of 19 PageID #: 95

Pursuant to Tenn. Code Ann. § 50-6-108, Tennessee workers' compensation benefits are the exclusive remedy for Che's next of kin for injuries suffered by Che during the course and scope of his employment. *See Valencia v. Freeland & Lemm Constr. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citing *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.W.2d 760 (Tenn. 1963)). The statutory "exclusivity" provision under Tennessee's workers' compensation law provides, in pertinent part, as follows:

> The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident. . . shall exclude *all other rights and remedies* of the employee, the employee's personal representative, dependents or next of kin, *at common law or otherwise*, on account of the injury or death.

Tenn. Code Ann. § 50-6-108(a) (emphasis added). Because the personal injuries complained of by Plaintiffs are governed by the exclusive remedy doctrine, meaning they can only be prosecuted as a workers' compensation claim in Tennessee, no common law claims against Eskola are viable. *See Frayser v. Dentsply Intern., Inc.*, 78 S.W.3d 242, 248 (Tenn. 2002).[2]

Because general contractors are subject to potential liability under the Tennessee Workers' Compensation Law for injuries sustained by a subcontractor's employees,[3] Tennessee courts have

---

of the Plaintiffs Mateo Ba tut and Aurelia Che Cuz de Ba's . . . son, Dennis Ba Che. . . ."). As such, no claim has been or should be made against Eskola's workers' compensation carrier.

[2] Although Tennessee courts have created an exception to the workers' compensation exclusivity provision for intentional torts, Plaintiffs do not allege that any defendant acted with the "actual intent" to injure Che and thus this exception is inapplicable here. *See, e.g., Valencia*, 108 S.W.3d at 240, 242 (holding that even proof of gross or criminal negligence is insufficient to support the intentional tort exception to the workers' compensation exclusivity provision and that "[t]he common law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of general intentional injury.").

[3] *See* Tenn. Code Ann. § 50-6-113(a) ("A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.").

consistently concluded that general contractors are entitled to the benefit of statutory immunity from any claims involving on-the-job injuries brought outside of the workers' compensation statute. *See, e.g., Manning v. Rentenback Eng'g Co.*, 625 S.W.2d 718 (Tenn. Ct. App. 1981) (noting that in *Adams v. Hercules Powder Co.*, 175 S.W.2d 319 (1943), the Tennessee Supreme Court held that a subcontractor's employees may not pursue common law claims against a prime contractor); *Scott v. AMEC Kamtech, Inc.*, 583 F. Supp. 2d 912, 918 (E.D. Tenn. 2008) ("Where the subcontractor has provided workers' compensation insurance, the employee is barred from asserting common law claims against the general contractor."). The policy behind this is as follows: "Tennessee law requires the subcontractor to provide workers' compensation insurance, and it made the general contractor derivatively liable for that insurance. For this Court to deny the general contractor the benefit of Tennessee's exclusive remedy provision after it has complied with the statute would frustrate the public policy of the Tennessee workers' compensation law." *Scott*, 583 F. Supp. 2d at 921.

As set forth above, the workers' compensation exclusivity provision applies equally to Eskola as the general contractor as it does to Jr. Roofing as Che's employer. In short, Plaintiffs are barred from asserting common law claims against either Eskola or Jr. Roofing relating to Che's workplace injuries, and dismissal of Plaintiffs' common law claims against Eskola is required. For these reasons, Counts I (Negligence/Gross Negligence) and II (Negligence Per Se) should be dismissed as barred under the workers' compensation exclusivity provision.

**II.** **Plaintiffs' FLSA claim against Eskola should be dismissed for failure to state a claim for which relief may be granted.**

In Count III, Plaintiffs allege that Eskola and Jr. Roofing failed to comply with minimum wage and maximum hour requirements of the FLSA. Plaintiffs seek to pursue "FLSA claims as an

opt-in collective action on behalf of Denis [Che] and all similarly situated employees pursuant to 29 U.S.C. § 216(b)." Doc. 1-1, Compl., ¶ 46. According to Plaintiffs:

> Denis worked from 6:00am to 6:00pm either five (5) or six (6) days per week. Jr. Roofing paid him $16 per hour for his work every week by check. He was paid straight time with no overtime pay for hours worked over 40 per week.

*Id.*, ¶4. The claim should be dismissed because the Complaint does not contain sufficient facts that would plausibly demonstrate that Eskola could be deemed his "employer" under the FLSA as required by *Twombly/Iqbal*.

As alleged in the Complaint, Jr. Roofing—not Eskola—employed Che and even drove him to and from work. Doc. 1-1, Compl., ¶¶ 3-5. Plaintiffs, nevertheless, allege that Eskola was a "statutory and/or joint employer[]" under the FLSA. *Id.*, ¶ 48. As Judge Richardson recently noted in *Carson v. Ever-Seal, Inc.*, No. 3:22-cv-00205, 2024 WL 2060130, at *5 (M.D. Tenn. May 7, 2024):

> Whether a party is an employer within the meaning of the FLSA is a legal determination made by applying the "economic reality" test. *Id.* (internal citations omitted). Under this test, the "economic reality" of the relationship between a plaintiff and a defendant "determines whether their relationship is one of employment [i.e., employee and employer]." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012) (quoting *Solis v. Laurelbrook Sanitarium & Sch. Inc.*, 642 F.3d 518, 522 (6th Cir. 2011)). This analytical approach requires a case-by-case analysis of "the 'circumstances of the whole business activity." *Id.* (citing *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)). Relevant factors may include: (1) whether the plaintiff is an integral part of the operations of the putative employer; (2) the extent of the plaintiff's economic dependence on the defendant[]; (3) the defendant's substantial control of the terms and conditions of the work of the plaintiff; (4) the defendant's authority to hire or fire the plaintiff; and (5) whether the defendant maintains the plaintiff's employment records and establishes the rate and method of payment. *Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 689 (S.D. Ohio 2015) (citing *Ellington*, 689 F.3d at 555). "These factors are not exhaustive and '[n]o one factor is dispositive; rather, it is incumbent upon the courts to transcend traditional concepts of the employer-employee relationship and assess the economic realities presented by the facts of each case.' " *Ellington*, 689 F.3d at 555 (quoting *Dole*, 942 F.2d at 966) (internal quotation marks omitted).

"Determining employer status under the FLSA is a question of law." *Gowey v. True Grip & Lighting, Inc.,* 520 F. Supp. 3d 1013, 1022 (E.D. Tenn. 2021) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991)).

Here, the only allegation in the Complaint that appears germane to this analysis is the following vague and conclusory statement: "Once Jr. Roofing dropped Denis and his co-workers at the jobsite, they were supervised during the day by an employee of Eskola, who controlled every aspect of their work." Doc. 1-1, Compl., ¶ 7. This is a "naked assertion[] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. The Complaint provides no hint as to *how* Eskola supposedly "supervised" or "controlled" Che. Doc. 1-1, Compl., ¶ 7. In fact, the reference to "a Jr. Roofing foreman pick[ing] up" Che from home to take him to the job suggests that he was supervised by a Jr. Roofing foreman. *Id.*, ¶ 5. Even if the Court construed the conclusory language in Paragraph 7 of the Complaint as true, it references supervision or control pertaining *only* to the specific Glencliff High School project and not broadly to *other* aspects of Che's work unrelated to that project. Thus, Plaintiffs do not plead facts that would plausibly show that Eskola's "substantial control of the terms and conditions of the work of the plaintiff." *Carson*, 2024 WL 2060130, at *5.

Nor does the Complaint allege facts that would plausibly show that Che was an "integral part of the operations of" Eskola. *Id*. Indeed, Plaintiffs do not allege that Che even worked on any other jobs in which Eskola served as the general contractor. And the Complaint alleges that Jr. Roofing was one of "at least 3" subcontractors on the job. Doc. 1-1, Compl., ¶ 19.

Nor do Plaintiffs allege facts that would plausibly show that Che had any "economic dependence" on Eskola. *Carson*, 2024 WL 2060130, at *5. Plaintiffs do not allege that Eskola paid Che any wages and, again, Plaintiffs do not allege that Che worked on any jobs in which Eskola was involved other than the Glencliff High School job. According to the Complaint, Jr. Roofing

7

Case 3:24-cv-00836    Document 23    Filed 08/07/24    Page 7 of 19 PageID #: 99

"transported him to *different jobsites* each day to perform roofing work for prime contractor*s*." Doc. 1-1, Compl., ¶ 3 (emphasis added). Plaintiffs do not even allege how many days that Che worked on the Glencliff High School job site.

Plaintiffs also do not and cannot allege that Eskola had the "authority to hire or fire" Che. *Carson*, 2024 WL 2060130, at *5. Nor do Plaintiffs allege that Eskola "maintains [Che's] employment records and establishes the rate and method of payment." *Id.* To the contrary, Plaintiffs allege that Che was paid by Jr. Roofing. Doc. 1-1, Compl., ¶ 4.

In sum, Plaintiffs have not alleged any facts that would demonstrate that the "economic reality" of Che's relationship with Eskola was anything other than a typical situation in which a general contractor relies on a subcontractor to perform services on a job. *See Morales v. Performance Master, Inc.*, 2024 WL 2882184, at *4 (S.D.N.Y. June 6, 2024) (noting that the FLSA "does not make every general contractor liable for every subcontractor's workers"). For these reasons, Plaintiffs' FLSA claim against Eskola should be dismissed.

**III.   The Court should dismiss Plaintiffs' unjust enrichment claim (Count IV) against Eskola.**

Plaintiffs allege that Eskola and MNPS "have been unjustly enriched by stealing wages from workers and exposing workers to bodily harm at work." Doc. 1-1, Compl., ¶ 61. "Under an unjust enrichment theory, courts impose a contractual obligation where there is 'no contract between the parties or the contract has become unenforceable or invalid,' and the defendant will be unjustly enriched unless the court imposes a quasi-contractual obligation." *Family Trust Servs. LLC v. Green Wise Homes LLC*, -- S.W.3d --, 2024 WL 3354887, at *13 (Tenn. July 10, 2024) (quoting *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)). "[T]he elements of an unjust enrichment claim are (1) '[a] benefit conferred upon the defendant by the plaintiff', (2) 'appreciation by the defendant of such benefit', and (3) 'acceptance of such

8

benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Id.* (quoting *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)).

To the extent that Plaintiffs predicate their unjust enrichment claim on Che being physically harmed, the claim is barred by the workers' compensation exclusive remedy as set forth above. Even if it were not, Plaintiffs plead no facts that would plausibly show how Eskola was enriched by the fact that Che was injured.

Plaintiffs' claim that Eskola was unjustly enriched by "stealing wages" from Che and others, Doc. 1-1, Compl., ¶ 61, also fails. The essence of Plaintiffs' theory is that "MNPS's procurement process incentivizes contractors to subcontract labor in the cheapest manner possible by cutting safety and security measures," and that Che and others provided labor on the Glencliff High School that was "undertaken for Defendants' disproportionate profit at far less than the legal mandated minimum wage." *Id.*, ¶ 63.

The Complaint, however, does not set forth facts that would plausibly show *how* MNPS supposedly incentivized Eskola or others to cut corners. Nor does the Complaint allege how Eskola received a "disproportionate profit" at the expense of Che or anyone else. In fact, the Complaint does not even allege facts that would plausibly show how anything that Eskola did had any impact on how Che's employer, Jr. Roofing, elected to compensate its employees. Nothing that Eskola did or did not do as it relates to the safety condition of the high school has any connection whatsoever with the manner by which Jr. Roofing chose to pay its workers.

In fact, before pursuing such a claim, a plaintiff must first "demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract."

9

Case 3:24-cv-00836    Document 23    Filed 08/07/24    Page 9 of 19 PageID #: 101

*Freeman Indus.* 172 S.W.3d at 525. Plaintiffs, however, have not exhausted their remedy against Jr. Roofing—the party actually responsible for paying Che's wages.

Finally, insofar as Plaintiffs allege that Che was not paid "the legally mandated minimum wage," *id*., their claim is preempted by the FLSA. In *Torres v. Vitale*, 954 F.3d 866, 873 (6th Cir. 2020), the Sixth Circuit found that "the FLSA is the sole vehicle through which a plaintiff can remedy its own substantive guarantees."

In *Cayton v. Metro. Gov't of Nashville*, No. 3:20-cv-00859, 2022 WL 183437, at *6 (M.D. Tenn. Jan. 19, 2022), Magistrate Judge Newbern found that a plaintiff may pursue an unjust enrichment claim if "the unjust enrichment claim offers a remedy other than that provided in the FLSA." There, the plaintiffs brought suit to recover unpaid overtime compensation under the FLSA and sought to amend their complaint to add an unjust enrichment claim under Tennessee common law. *Id.*, at *1. As part of their unjust enrichment claim, the plaintiffs sought damages that "encompass more than the damages addressed by their wage and hour claims[.]" *Id.* at *6.[4] Addressing the defendant's argument that Tennessee law precludes a plaintiff from pursuing an unjust enrichment claim if he or she simultaneously pursues an FLSA claim, Magistrate Judge Newbern concluded that "Plaintiffs are not entitled to a double recovery for the unpaid wages and overtime they seek under the FLSA." *Id.* at *7. The Court, however, allowed the plaintiffs to pursue an unjust enrichment claim because the defendant "has not shown that the damages Plaintiffs seek under an unjust enrichment theory fully overlap with the statutory remedies available under the FLSA such that Plaintiffs may not assert the equitable claim." *Id.* Here, it appears that Plaintiffs'

---

[4] In addition to unpaid wages, the plaintiffs sought "the full value of their retirement benefits as a result of their failure to pay them . . . ." *Id.*

10
Case 3:24-cv-00836    Document 23    Filed 08/07/24    Page 10 of 19 PageID #: 102

"stealing wages" unjust enrichment claim is duplicative of their FLSA claim set forth in Count III and, therefore, is preempted.

For all of these reasons, the Court should dismiss Plaintiffs' claim against Eskola set forth in Count IV of the Complaint.

**IV.     The Court should dismiss Plaintiffs' civil rights claim (Count V) against Eskola.**

After pleading that Metro and MNPS "violate[d] 42 U.S.C. §§ 1981, 1983, 1985, and the 14th Amendment of the U.S. Constitution," by "underfund[ing] majority Latino school like Glencliff," Plaintiffs allege that "Defendants Eskola, Metro, and MNPS, acting in concert, unlawfully interfered with [Che's] civil rights in violation of 42 U.S.C. § 1985(3)." Doc. 1-1, Compl., ¶¶ 91, 93-94. "The elements of such a claim are '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 360 F. Supp. 3d 714, 725 (M.D. Tenn. 2019), *aff'd* 805 F. App'x 379 (6th Cir. 2020) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). This claim is outlandish on its face and should be dismissed against Eskola for many reasons.[5]

   *A.     Plaintiffs have not pled facts that would demonstrate that Eskola conspired.*

As noted in *Smiley v. Tenn.*, No. 1:16-CV-469-HSM-SKL, 2017 WL 3975001, at *10 (E.D. Tenn. Sept. 8, 2017), *aff'd,* 2018 WL 8058615 (6th Cir. Oct. 26, 2018):

> A civil conspiracy "is an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (citing *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must

---

[5] Based on the Supremacy Clause in the U.S. Constitution, this federal cause of action is not preempted by the Tennessee workers' compensation exclusive remedy.

> show the existence of a single plan, that the alleged coconspirators shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 566, 127 S.Ct. 1955, 167 L.Ed.2d 929 (recognizing that allegations of conspiracy must be supported by facts that give rise to a "plausible suggestion of conspiracy," not merely a "possible" one); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987) (holding "conclusory allegations unsupported by material facts will not be sufficient to state a claim under § 1983").

*See also Landers v. Cadreche*, No. 3:19-cv-00932, 2020 WL 13890323, at *1 (M.D. Tenn. Feb. 19, 2020) (Crenshaw, J.) (noting that "vague and conclusory allegations of conspiracy, unsupported by any factual allegations, are insufficient to state a claim" and that "it is well-settled that conspiracy claims must be pled with some degree of specificity") (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)); *see also Griffin v. Haywood County,* No. 1:23-cv-02142, 2023 WL 8242470, at *2 (W.D. Tenn. Nov. 28, 2023) (similar); *Ibarra v. Barrett*, No. 305-0971, 2007 WL 1191003, at *16 (M.D. Tenn. Apr. 19, 2007) ("[T]he Sixth Circuit has indicated that '[c]ourts have traditionally viewed conspiracy suits against public officials with suspicion and disfavor'") (quoting *Fisher v. City of Detroit,* No. 92-1759, 1993 WL 344261, at *5 (6th Cir. Sept. 9, 1993)).

The following conclusory allegations reflect Plaintiffs' only attempt to plead how Eskola played a role in any "conspiracy":

> 92. Similarly, Defendants, both individually and collectively, negligently and intentionally conspired along with the other named Defendants to institute and maintain procurement customs and policies that willfully ignore the safety practices and histories of contractors participating in the bidding process. The failure to ensure MNPS contractors meet minimum safety standards is a direct result of these customs and policies that intentionally forsake construction laborers, a majority Latino population. In practice, such customs and policies operate in such a manner that is racially and ethnically discriminatory against predominantly Latino construction laborers, including young Denis who lost his life as a result.

\*   \*   \*

> 94. Additionally, Defendants Eskola, Metro, and MNPS, acting in concert, unlawfully interfered with Denis's civil rights in violation of 42 U.S.C. § 1985(3). By continuing to award Eskola steady and regular business, Metro and MNPS conspired with Eskola to cut corners, willfully ignore laws and regulations intended to protect workers, and exploit construction laborers like Denis for their own benefit. Behind this conspiracy to deprive Denis and others like him of equal protection, or equal privileges or immunities of the laws, was intentional racial discrimination against the predominantly Latino construction laborers. As a result, Denis was deprived not only of his rights and privileges under the law but of his very life.

Doc. 1-1, Compl., ¶¶ 92, 94.

Plaintiffs plead no facts—much less with particularity—that would plausibly show *how* Eskola conspired as it relates to Metro's "procurement customs and policies." *Id.*, ¶ 92. Further, Plaintiffs' mere allegation that Metro has a history of awarding business to Eskola does not raise a plausible inference that "Metro and MNPS conspired with Eskola to cut corners, willfully ignore laws and regulations intended to protect workers, and exploit construction laborers like Denis for their own benefit." *Id.*, ¶ 94. These paltry allegations do not suffice. *See, e.g., Griffin,* 2023 WL 8242470, at *3 (dismissing similar claim where "Plaintiffs' allegations of a conspiracy are wholly conclusory," they "allege no facts that indicate the existence of a plan, much less that any defendant shared a conspiratorial objective or that any actions were taken in furtherance of a conspiratorial plan," and they "appear to rely on the attenuated inference of a conspiracy"); *Sisemore v. Bailey*, No. 2:14-cv-49, 2017 WL 663142, at *2 (E.D. Tenn. Feb. 16, 2017) (dismissing conspiracy claim where plaintiff "has provided no factual allegations to link these Defendants 'to any common act designed to deprive [plaintiff] of [his] constitutional rights'" and allegations are "conclusory") (citations omitted); *Terzneh v. Fed. Nat'l Mortg. Ass'n,* 2021 WL 4529707, at *8 (W.D. Tenn. Oct. 4, 2021) ("These [conspiracy] allegations are not only conclusory but also difficult to understand."); *Leisure v. Franklin County Court of Common Pleas,* 2006 WL 1281764, at *4 (S.D.

Ohio May 8, 2006) (dismissing conspiracy claim where plaintiff provided conclusory allegations and "alleges no facts giving rise to an inference that there was any 'meeting of the mines,' or any express or implied agreement among the Defendants to accomplish a common objective").

Indeed, even if Plaintiffs alleged sufficient facts that show that there was some kind of conspiracy between Eskola and Metro to "cut corners" and "ignore safety practices," Doc. 1-1, Compl., ¶¶ 92, 94, Plaintiffs have not come remotely close to pleading facts that would plausibly show that there was any kind of "agreement" with the "objective" of depriving *anyone* of their constitutional rights. And even if Plaintiffs met their burden of pleading facts that could show that Metro had such an intent (which he has not done), they have pled no facts that would plausibly show that Eskola had anything to do with it.

### B. *Plaintiffs have not pled facts that would show a constitutional deprivation.*

Plaintiffs' conspiracy claim also fails because their Complaint, even if true, "does not identify how Defendants' actions resulted in the deprivation of constitutional rights." *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x 986, 988 (6th Cir. 2012). Plaintiffs must show that "a right secured by the Constitution or a federal statute has been violated[.]" *Id.* Paragraph 94 of the Complaint alleges that Che was deprived of "his rights and privileges under the law," but it cites no Constitutional or federal statutory right of which he was deprived. *See id.* at 988-89 (noting that "to establish a 'conspiracy' under a Section 1983 claim, a plaintiff must first demonstrate a constitutional deprivation," but that the complaint "presents nothing more than legal conclusions in this respect") (citations omitted); *Pendleton v. Randolph*, No. 3:18-cv-01282, 2018 WL 6591428, at *4 (M.D. Tenn. Dec. 14, 2018) (dismissing § 1985(3) claim where plaintiff "does not allege that he actually suffered an injury to a federally protected right"); *Jordan v. Brown*, No. 1:16-cv-0001, 2016 WL 128520, at *2 (M.D. Tenn. Jan. 12, 2016) (dismissing civil rights claim

where "[t]he plaintiff does not identify what constitutional provision he believes this conduct would violate"); *Montgomery v. Gentry*, No. 3:20-cv-00406, 2021 WL 4074792, at *8 (M.D. Tenn. Aug. 17, 2021), *report & recommendation adopted*, WL 4060462 (M.D. Tenn. Sept. 7, 2021) (similar); *Rye v. City of Clarksville, Tenn.*, No. 3-10-1221, 2012 WL 6623080, at *2 (M.D. Tenn. Dec. 19, 2012) (similar).

### C. Plaintiffs have not pled facts that would demonstrate that Eskola was motivated to deprive anyone of a constitutional right.

Even if Plaintiffs pled facts to show that Eskola was part of some "conspiracy" and even if he could show that Che was deprived of a constitutional right, the Complaint pleads no facts that would plausibly show that the motivation for Eskola, Metro, and/or MNPD's actions was to deprive Che (or anyone else) of constitutional rights. "[T]he Sixth Circuit has repeatedly held that a plaintiff must also 'allege that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.'" *Deja Vu*, 360 F. Supp. 3d at 725 (quoting *Moniz v. Cox*, 512 Fed. Appx. 495, 499-500 (6th Cir. 2013)). Although Plaintiffs allege that Defendants were motivated to discriminate against Latinos, the Complaint pleads no facts that plausibly support any such inference.

The essence of Plaintiffs' contention is that MNPS supposedly "underfunded" upkeep for majority-Latino schools. Doc. 1-1, Compl., ¶¶ 78-81. Yet, the Complaint alleges no facts to support that wholly conclusory assertion. Plaintiffs, for instance, do not set forth any data that compares the funding of upkeep of majority-Latino schools to that of other MNPS schools. The only "fact" alleged is that MNPS hired an HVAC company to repair Glencliff High School's HVAC system but that "MNPS so underfunded the project that the resulting quality of the new HVAC system is little better than the old one." *Id.*, ¶ 81. Yet, Plaintiffs plead no facts that would create a plausible inference that any issues with the repair of the system is the consequence of "underfunding." Nor

15

Case 3:24-cv-00836    Document 23    Filed 08/07/24    Page 15 of 19 PageID #: 107

do they plead facts that would create a plausible inference that there was any difference in the manner by which MNPS contracts for the repair of HVAC systems for majority-Latino schools as compared to other schools.

Plaintiffs cap off their civil rights claim with the following illogical assertion:

> 84. Latinos account for approximately 11% of Nashville's population, yet here and statewide, Latinos account for a majority (approximately 52%) of construction laborers. Accordingly, MNPS policies and customs around its construction procurement processes, particularly as they relate to onsite safety practices and enforcement, disproportionately impact Latinos.

Doc. 1-1, Compl., ¶ 84. Even were it accurate that Latinos account for a majority of construction workers, there is no plausible basis to infer that any "underfunding" of majority-Latino schools would somehow disproportionately affect Latino workers or that it would serve as evidence of a motivation to deprive Che of constitutional rights on the basis of his race.

Plaintiffs ask the Court to leap to conclusions based on attenuated circumstances rather than setting forth facts that create a reasonable inference, and accordingly, do not have a viable civil rights claim. *See Pendleton*, 2018 WL 6591428, at *4 (plaintiff "does not allege any facts suggesting that he was targeted because of race or that the purpose of the purported conspiracy was to deprive him of equal protection of the law because of his membership in that class"); *Jones v. Tenn.*, No. 3:21-cv-123, 2022 WL 4351942, at *6 (E.D. Tenn. Sept. 19, 2022), *amended on reconsideration in part,* 2023 WL 3766809 (E.D. Tenn. June 1, 2023) (similar); *Evans v. City of Etowah*, No. 1:06-cv-252, 2007 WL 1143948, at *7 (E.D. Tenn. Apr. 17, 2007) (similar).

### D.  *Plaintiffs have not pled facts that would demonstrate any casual nexus between Che's death and any constitutional violation.*

Plaintiffs' claim also fails because, even if they could show that Defendants somehow conspired to discriminate against Latinos, they have not pled facts that would plausibly link Che's death to any alleged discrimination. According to the Complaint, Che's "tragic death is, in many

16
Case 3:24-cv-00836     Document 23     Filed 08/07/24     Page 16 of 19 PageID #: 108

ways, the natural and foreseeable consequence of MNPS's discrimination underfunding of majority-Latino schools in the district." Doc. 1-1, Compl., ¶ 76. It is not remotely foreseeable that underfunding a majority-Latino school would lead to the death of a Latino construction worker. And even if it were, this certainly cannot support an inference that Defendants were acting in concert to underfund majority-Latino schools with the objective of placing Latino construction workers in harm's way. *See Trans Rail Am.*, 478 F. App'x at 988 (dismissing civil rights claim where complaint "does not tie any factual allegations to the alleged constitutional violations"). Quite simply, the fact that Che happened to be Latino had nothing to do with the fact that this tragic accident occurred.

In sum, Plaintiffs have fallen far short of pleading sufficient facts to support their civil rights claim under *Twombly/Iqbal*, much less the heightened standard of particularity necessary to support a conspiracy claim. The Court should not "credit 'conclusory allegations or draw farfetched inferences.'" *Haskett v. S. Benefit Adminstrators, Inc.,* No. 2:19-cv-02355, 2021 WL 6752326, at *2 (W.D. Tenn. Dec. 1, 2021).

### E.  *Plaintiffs lack standing to assert a claim on behalf of anyone other than Che.*

Finally, to the extent that Plaintiffs endeavor to crusade on behalf of others who are not parties to this lawsuit, they lack standing to do so. For instance, Plaintiffs allege that Defendants' "custom and policy operates in such a manner that is racially and ethnically discriminatory against the predominantly Latino student population at Glencliff" and "racially and ethnically discriminatory against predominantly Latino construction laborers." Doc. 1-1, Compl., ¶¶ 91-92; *see also id.*, ¶ 94 (referencing a conspiracy of "intentional racial discrimination against the predominantly Latino construction laborers").

Plaintiffs have no standing to assert a civil rights claim on behalf of high school students or any construction workers other than Che. *Cramblit v. Fikse*, 978 F.2d 1258 (6th Cir. 1992) ("[A]n action under 42 U.S.C. § 1983 inures only to the benefit of one whose own personal constitutional rights were violated."); *Kinzer v. Metro. Gov't of Nashville*, 451 F. Supp. 2d 931, 946 n.8 (M.D. Tenn. 2006) (noting that the Sixth Circuit has "confirmed the principal that one person generally does not have standing to sue for civil rights violations inflicted on another") (citing *Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974)); *Simpson v. White Cnty.,* No. 2:13-cv-00087, 2016 WL 323732, at *7 (M.D. Tenn. Jan. 27, 2016) (similar).

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Plaintiffs' claims against Eskola with prejudice.

Respectfully submitted,

*/s/ David L. Johnson*
David L. Johnson (TN BPR #018732)
W.W. Frank Wilbert (TN BPR #23090)
Lieselotte M. Carmen-Burks (AL Bar#8304T46E)
Butler Snow LLP
150 Third Avenue South, Suite 1600
Nashville, Tennessee 37201
David.Johnson@butlersnow.com
Frank.Wilbert@butlersnow.com
Liesel.Carmen-Burks@butlersnow.com
Phone: (615) 651-6700
Fax: (615) 651-6701

*Attorneys for Defendant Eskola LLC*

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing Memorandum of Law has been served via the U.S. District Court's ECF filing system upon the following:

Kerry Lee Dietz
Michael G. Stewart
Stranch, Jennings & Garvey, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
kdietz@stranchlaw.com
mstewart@stranchlaw.com
Tel: (615) 254-8801
*Attorneys for Plaintiffs*

Melissa Roberge
Metropolitan Courthouse, Suite 108
P.O. Box 196300
Nashville, TN 37219
melissa.roberge@nashville.gov
Tel: (615) 862-6341
*Attorney for Defendants Metro Nashville Public Schools and Metropolitan Government of Nashville & Davidson County, Tennessee*

E. Jason Ferrell
Brewer Krause Brooks Chastain & Meisner, PLLC
545 Mainstream Drive, Suite 101
Nashville, TN 37228
Tel: (615) 630-7716
jferrell@bkblaw.com
*Attorney for Defendant Builders Mutual Insurance Company*

Robert Martin
McAngus Goudelock & Courie
120 Brentwood Commons Way, Suite 625
Brentwood, TN 37027
Tel: (615) 499-7177
Robert.martin@mgclaw.com
*Attorney for Defendant JR Roofing & Construction LLC*

This 7th day of August, 2024.

                                                 */s/ David L. Johnson*
                                                 David L. Johnson